United States District Court
Southern District of Texas
**ENTERED**
June 11, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| TANALI FAMILY TRUST, | § § | |
| Plaintiff, | § § | |
| VS. | § § | CIVIL ACTION NO. 1:22-CV-154 |
| UNITED PARCEL SERVICE, INC., | § § § | |
| Defendant. | § | |

## MEMORANDUM OPINION

In October 2022, Plaintiff Tanali Family Trust ("TFT") commenced this action in Texas state court, alleging that Defendant United Parcel Service, Inc. ("UPS") violated the Texas Deceptive Trade Practices Act and committed common law fraud and breach of contract in connection with packages that allegedly went undelivered.

After removing the action to this Court based on 28 U.S.C. § 1331, UPS moved for summary judgment as to all of TFT's causes of action. (*See* Notice of Removal, Doc. 1; Mot., Doc. 20)

On May 20, 2024, the Court granted UPS's Motion for Summary Judgment. (Order, Doc. 24) In this Memorandum Opinion, the Court explains the grounds supporting that Order.

**I.  Summary Judgment Facts and Procedural History[1]**

Between September 2020 and November 2022, TFT ordered between fifteen and twenty packages through the website of Amazon, Inc., who is not a party to this lawsuit. (TFT's Interrog. Resp., Doc. 20–2, 8–13) The invoices for the orders reflected the same delivery address: Denis A.

---

[1] "When considering a motion for summary judgment, the court views all facts and evidence in the light most favorable to the non-moving party." *Clark v. Champion Nat'l Sec., Inc.*, 952 F.3d 570, 578–79 (5th Cir. 2020); *see also Spring St. Partners–IV, L.P. v. Lam*, 730 F.3d 427, 435 (5th Cir. 2013) ("We resolve factual controversies in favor of the nonmoving party, but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.").

Downey, 281 Resaca Point Dr., Brownsville, Texas 78526.[2] (*Id.*) Downey holds the position of Trustee for TFT, and is also the attorney representing TFT in this lawsuit. (*See* TFT Init. Discl., Doc. 11, 1)

"For every shipment to be delivered by UPS", Downey "was physically present at the shipment address on each and every day designated by UPS as the delivery date". (Downey Decl., Doc. 21–1, ¶ 3) He remained at the address "for the hours designated by UPS as the time window" for the deliveries. (*Id.*)

"Some shipments simply disappeared" or were otherwise not delivered. (*Id.* at ¶¶ 5, 7) Other shipments containing food and medical devices arrived in an untimely manner. (*Id.* at ¶ 7) In all, Downey estimates spending in excess of 100 hours awaiting UPS deliveries. (*Id.* at ¶ 9) "Many" of the undelivered or untimely-delivered packages contained items valued in excess of $1,000. (*Id.* at ¶ 7)

"On several occasions [Downey] contacted UPS . . . and was told that the address for shipment was not correct [or that] the package had been placed on the wrong truck, or that an inexperienced driver could not find the delivery address, or that a driver did not have the gate code." (*Id.* at ¶ 4)

## II.   Summary Judgment Standard

Under Federal Rule of Civil Procedure 56, the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transp. A/S v. Int'l Marine*

---

[2] Based on UPS tracking numbers that TFT provided during discovery, it appears that several packages were initially shipped to "281 Resaca Drive, Brownsville, Texas 78520", but successfully delivered as "Driver Released" to "281 Resaca Point Road, Brownsville, Texas 78526." (Fuller Decl. Ex. 2, Doc. 20–5, 2)

*Terminals P'ship*, 520 F.3d 409, 412 (5th Cir. 2008). "If the moving party meets the initial burden of showing there is no genuine issue of material fact, the burden shifts to the nonmoving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Distribuidora Mari Jose, S.A. de C.V. v. Transmaritime, Inc.*, 738 F.3d 703, 706 (5th Cir. 2013). Courts cannot "assume, however, in the absence of any proof, that the nonmoving party could or would prove the necessary facts." *Paz v. Brush Engineered Materials, Inc.*, 555 F.3d 383, 391 (5th Cir. 2009).

"[W]hen the nonmovant has the burden of proof at trial, the moving party may make a proper summary judgment motion, thereby shifting the summary judgment burden to the nonmovant, with an allegation that the nonmovant has failed to establish an element essential to that party's case." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). "[W]hile it is true that a movant cannot support a motion for summary judgment with a conclusory assertion that the nonmovant has no evidence to support his *case*, a movant may support a motion for summary judgment by pointing out that there is no evidence to support a *specific element* of the nonmovant's claim." *Id.* at 335 n. 10 (emphasis in original).

"Federal preemption is an affirmative defense that a defendant must plead and prove." *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012) (citing *Met. Life Ins. Co. v. Taylor*, 481 U.S. 58, 63 (1987)). When a defendant moves for summary judgment based on federal law preemption, a court should grant the motion "where the evidence is such that 'it would require a directed verdict for the moving party.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986) (quoting *Sartor v. Ark. Gas Corp.*, 321 U.S. 620, 624 (1944)). As "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment," a court must undertake an examination of the substantive law to identify the material facts. *Anderson*, 477 U.S. at 248; *see also Nadheer v. Ins. Co. of Penn.*, 506 F. App'x 297, 299 (5th Cir. 2013) (explaining that "a district court's ruling as to the preemptive

effect of federal law presents a question of law" that a court can consider on a motion for summary judgment).

## III. Analysis

In its Petition, TFT generally alleges that UPS engaged in "Texas Deceptive Trade Practices Act violations as well as common law fraud and a breach of third party contractual rights." (Pet., Doc. 1, 10) UPS challenges each cause of action. As to a breach of contract claim, UPS contends that TFT lacks standing because no contract exists between the two parties. (Mot., Doc. 20, ¶ 2) As to the remaining claims based on the DTPA and Texas tort law, UPS argues that federal law preempts such causes of action. (*Id*. at ¶ 3)

### A. Breach of Contract

Standing represents "a jurisdictional question which must be resolved as a preliminary matter". *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989). Under Texas law, a plaintiff may not enforce a contract to which it is not a party. *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002); *see also Smiley v. Oxford Capital, LLC*, 100 F. App'x 970, 973 (5th Cir. 2004) (collecting Texas state cases which require privity of contract to enforce contractual rights).

At the same time, "it is well settled that a person who is not a party to a contract may nevertheless have standing to enforce the contract if it was made for that person's benefit." *Kona Tech. Corp. v. S. Pac. Transp. Co.*, 225 F.3d 595 (5th Cir. 2000) (collecting third-party beneficiary cases under Texas state law). The third party may recover on a contract "only if the parties intended to secure a benefit to that third party, and only if the contracting parties entered into the contract directly for the third party's benefit." *Stine*, 80 S.W.3d at 589 (citing *MCI Telecomms. Corp. v. Tex. Util. Elec. Co.*, 995 S.W.2d 647, 651 (Tex. 1999)). "It is not enough that the third party would benefit—whether directly or indirectly—from the parties' performance, or that the parties knew that the third party would benefit[.] Nor does it matter that the third party intended or expected to benefit from the contract, for only the 'intention of the contracting parties in this

respect is of controlling importance.'" *First Bank v. Brumitt*, 519 S.W.3d 95, 102–03 (Tex. 2017). The third party bears the burden to show that it is a beneficiary of the contract, and courts may "not create a third-party beneficiary contract by implication." *Stine*, 80 S.W.3d at 589 (quoting *MCI Telecomms. Corp.*, 995 S.W.2d at 651).

In the present case, the summary judgment record contains no contract between TFT and UPS. In fact, TFT does not allege that such a contract exists. On the contrary, TFT claims "third party contractual rights", presumably based on an assumed agreement between Amazon and UPS. (Pet., Doc. 1, 10) But on this front, TFT also fails to identify any contract, much less a contractual provision through which either Amazon or UPS "clearly and fully express[ed] an intent to confer a direct benefit" to TFT. *Stine*, 80 S.W.3d at 589. TFT bears the burden to submit evidence that creates a fact issue as to whether Amazon or UPS intended to secure a benefit to TFT and entered a contract directly for TFT's benefit. TFT provides no such evidence. As a result, TFT lacks standing as to any claim for breach of contract, whether based on an agreement between the parties or on third-party contractual rights.

### B. Non-Contractual Claims

Aside from its contractual claim, TFT also alleges causes of action under the DTPA and for Texas common law fraud. UPS contends that federal law preempts these causes of action based on state law, and that TFT alleges no claim under federal law.

The Carmack Amendment to the Interstate Commerce Act, 49 U.S.C. § 14706, provides a federal cause of action against common carriers "for loss or damages to goods arising from interstate transportation of those goods." *Hoskins v. Bekins Van Lines*, 343 F.3d 769, 777–78 (5th Cir. 1998) (emphasis omitted). This federal cause of action is exclusive and completely preempts both state law claims and federal common law remedies. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 379 (5th Cir. 1998) (finding that the Carmack Amendment preempts federal common law remedies); *Moffit v. Bekins Van Lines Co.*, 6 F.3d 305 (5th Cir. 1993) (concluding

that the Carmack Amendment preempts state law claims); *see also Hoskins*, 343 F.3d at 777–78 (reaffirming *Moffit* and *Morris*); *Adams Express Co. v. Croninger*, 226 U.S. 491, 504–06 (1913) ("That the [Carmack Amendment] supersedes all the regulations and policies of a particular state upon the [subject of common carriers' liability] results from its general character[.] Almost every detail of the subject is covered so completely that there can be no rational doubt but that Congress intended to take possession of the subject, and supersede all state regulation with reference to it.").

In addition, UPS argues that federal common law preempts state common law and statutory claims as to air carriers. As a general matter, the preemptive effect of federal law as to air shipments is nearly co-extensive to that of ground shipments. *See Tran Enters., LLC v. DHL Exp. (USA), Inc.*, 627 F.3d 1004, 1011 (2010) (describing the "near-identity of the preemptive effect and limited liability requirements for air and ground shipments").

The Supreme Court in 1938 established that there is "no federal general common law." *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). But twenty years later, under the regulatory regime of the Federal Aviation Act of 1959, causes of action developed under federal common law to "govern[ ] the liability of air carriers for lost or damaged goods". *Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 928 (5th Cir. 1997). Then, in 1978, Congress enacted the Airline Deregulation Act of 1978, 92 Stat. 1705 (the "ADA"), as part of the deregulation of the airline industry. Within the ADA, Congress expressly preserved common law remedies against air carriers for lost shipments. *Sam L. Majors Jewelers*, 117 F.3d at 928–29. In light of this history, "a federal cause of action continues to survive for freight claims against air carriers", leaving "the resolution of claims for lost goods a 'purely judicial question for determination by the application of the federal common law . . . .'" *Id.* at 929 (quoting with approval *First Penn. Bank v. E. Airlines*, 731 F.2d 1113, 1122 (3d Cir. 1984)).

Most recently, in 1994, Congress enacted the Federal Aviation Administration Authorization Act of 1994, 108 Stat. 1569 ("the FAAAA"). Together, the ADA and FAAAA preempt any state law claim "related to a price, route, or service of an air carrier . . . when such carrier is transporting property by aircraft." 49 U.S.C. § 41713(b)(4)(A).

Taken together, the Carmack Amendment, ADA, and FAAAA, coupled with federal common law as to air shipments, afford broad preemptive coverage of all claims against carriers who ship packages and freight by air and ground, as to any causes of action related to such shipments and based on state law. Applying these doctrines, courts have repeatedly dismissed causes of action that plaintiffs alleged under the Texas DTPA and for common law fraud under Texas law. *See, e.g., Sam L. Majors Jewelers*, 117 F.3d 922 (affirming summary judgment in favor of an air carrier as to claims for breach of contract, negligence, and violations of the DTPA); *Moffit*, 6 F.3d 305 (affirming summary judgment because the Carmack Amendment preempted plaintiff's state law claims against an interstate shipper for, inter alia, breach of contract, violation of the DTPA, misrepresentation, and fraud).

In the present case, TFT's causes of action under the DTPA and common law fraud fall squarely within these preemption doctrines.[3] TFT bases its claims on UPS's alleged non- or untimely-delivery of packages, as well as misrepresentations that UPS allegedly made to TFT regarding those packages. Such claims stem from UPS's services as a ground and air carrier, and the alleged damages—to the extent that they can be discerned from the live pleading—concern the carrier's rates, routes, and services, and foreseeable damages such as lost time. Under these

---

[3] UPS also relies on federal law preemption to challenge TFT's claim based on third-party contractual rights. (*See* Mot., Doc. 20, ¶¶ 8–9, 25–28) The Fifth Circuit, however, "has yet to address whether the Carmack Amendment also completely preempts a contract-based third beneficiary claim". *New Process Steel Corp. v. Union Pac. R.R. Co.*, 91 F. App'x 895, 898 n.2 (5th Cir. 2003). As TFT lacks standing to advance its third-party beneficiary claim, see *supra* Section III.A, the Court does not reach the question of whether the claim is preempted by either the Carmack Amendment or federal common law.

circumstances, federal law preempts TFT's non-contractual claims based on Texas statutory and common law.

TFT all but concedes the described preemptive effect, devoting most of its Response to speculative arguments about future changes to the preemption doctrines. (*See, e.g.,* Resp., Doc. 21, 6 (claiming that possible modifications to the *Chevron* doctrine would in turn "have an impact on Interstate Commerce Act court decisions")) The Court, however, must apply current law, and not engage in speculation as to future doctrinal changes.

TFT also references hypotheticals that it claims exposes that UPS's position is "deeply troubling." (*Id.*) For example, TFT offers the example of "a UPS driver negligently run[ning] over the recipient in the recipient's driveway", and claims that UPS's position would afford no remedy against UPS. (*Id.*) But irrespective of the legal rights that such a recipient would possess, TFT's causes of action bear no resemblance to the example. TFT alleges only that UPS, a carrier of goods, failed to deliver certain packages and made various alleged misrepresentations concerning the non-delivery or untimely delivery of such packages. While it is true that the law recognizes that preemption does not apply to certain claims for separate harms unrelated to the contract of carriage, TFT makes no such claims. *See Tran Enters., LLC*, 627 F.3d 1004 (collecting cases and listing as examples of separate harms conversion, theft, assault by an employee of the carrier, and intentional infliction of emotional distress).

## IV. Conclusion

TFT acknowledges that it entered into no contract with UPS. And no evidence suggests that either Amazon or UPS entered a contract that could create third-party contractual rights in TFT's favor. As a result, TFT lacks standing as to any breach of contract claim.

As to the remaining causes of action, federal preemption doctrines under the Carmack Amendment, the ADA, the FAAAA, and federal common law unambiguously apply. This

conclusion requires the dismissal of TFT's claims under the DTPA and for common law fraud. And as TFT alleges no claims under federal law, TFT has no remaining viable cause of action.

In this Memorandum Opinion, the Court provides the grounds supporting its Order (Doc. 24) granting UPS's Motion for Summary Judgment. The Court will separately issue a Final Judgment in accordance with that Order and this supporting Memorandum Opinion.

Signed on June 11, 2024.

_____
Fernando Rodriguez, Jr.
United States District Judge